IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

FILED
99 FEB 22 PM 3:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| GENERAL MOTORS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | No.   CV 97-J-1546-J |
| | ) | |
| DANIEL BISHOP, | ) | |
| | ) | |
| Respondent. | ) | |

ENTERED
FEB 22 1999

### MEMORANDUM OPINION

This cause comes before this court on Respondent's two substantively identical motions for partial summary judgment or, in the alternative, for a jury trial (docs. 13 & 19). Since these two motions are apparently identical, this court deems the first motion moot pursuant to the separate order this day entered.

The court will proceed only on Respondent's second motion (doc. 19).

I.   **Pertinent Facts**

This case precipitated from an underlying cause currently pending in the Circuit Court for Walker County, Alabama ("the state court action"). The plaintiff in the state court action, Daniel Bishop, has sued Carl Cannon Chevrolet-Oldsmobile, Inc. ("the dealer"), Kenny Cheatham ("the salesman"), and General Motors Corporation ("General Motors") on several theories arising out of Bishop's purchase of a "new" General Motors vehicle from the dealer. At some point after the purchase, Bishop contends that he

1

became aware that the vehicle was not new at the time he purchased it. Bishop avers that the vehicle had been damaged, repaired, repainted and sold to him as new.

The contract for the sale of the vehicle was signed by Bishop and by an agent of the dealer. (The agent's signature is illegible. However, the identity of the agent is of no consequence for purposes of this action.) Said contract contained an arbitration clause which stated, in pertinent part, "Buyer/Lessee and Dealer agree that all claims, demands, disputes, or controversies of every kind or nature that may arise *between them* concerning [the vehicle and the sale thereof] ... shall be settled by binding arbitration...." (emphasis added). For the limited purposes of this action, this court presumes the validity of said arbitration agreement between Bishop and the dealer.

It is undisputed that General Motors was not a signatory to the contract containing the arbitration agreement. However, General Motors contends that it should still be allowed to compel Bishop to settle his claims against General Motors through binding arbitration.

## II.    Motion for partial summary judgment

### A.    Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477

U.S. 317, 322 (1986). The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Holcombe v. Alabama Dry Dock & Shipbuilding*, 1998 WL 758012 (S.D. Ala.); citing *Anderson*, 47 U.S. at 251-252.

The facts in this case are undisputed. *(See § I. supra.)* Thus, it is simply a question of law whether General Motors, a non-signatory to the arbitration agreement at issue, can enforce said agreement against a signatory, Bishop.

B.   Discussion

When Congress passed the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, "it was 'motivated, first and foremost, by a ... desire' to change" the English anti-arbitration rule that had been adopted by American courts. *Allied-Bruce Terminix Co., Inc. v. Dobson*, 513 U.S. 265, 270-271, 115 S. Ct. 834, 838 (1995) (citations omitted). Congress "intended courts to 'enforce [arbitration] agreements *into which the parties had entered*," and to 'place such agreements "upon the same footing as other contracts."'" *Allied-Bruce Terminix*, 513 U.S. at 271, 115 S. Ct. at 838 (citations omitted) (emphasis added) (brackets in original).

It is clear from the FAA and *Allied-Bruce Terminix* and that Congress and the Supreme Court intend for arbitration agreements to be enforced just as any other contract. Thus, "the fist task of a court asked to compel arbitration of a dispute is to determine

3

whether the parties agreed to arbitrate the dispute.... [A]s with any other contract, The parties' intentions control, but those intentions are generously construed as to issues of arbitrability" *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626, 105 S. Ct. 3346, 3353-3354 (1985).

It is an axiomatic principle of contract law that a contract is essentially an agreement between two or more parties and, except in special circumstances, can be enforced only among the parties to the contract. In the case at bar, it is undisputed that the written contract between Bishop and the dealer contained an arbitration clause. It is not the province of this court to determine the validity of said clause. It is also undisputed that General Motors was not a party to the contract between Bishop and the dealer. Bishop strongly contends that he did not agree to arbitrate his disputes with General Motors. Thus, without a special exception, General Motors has no right to enforce any part of the Bishop-dealer contract. General Motors contends that such a special exception exists allowing it to enforce the arbitration clause against Bishop. This court cannot agree.

General Motors relies heavily on *McBro Planning and Development Co. v. Triangle Elec. Construction Co., Inc.*, 741 F.2d 342 (11th Cir. 1984) and *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753 (11th Cir. 1993) for the proposition that a non-signatory can enforce an arbitration agreement against a signatory. However, those cases are very limited in scope and cannot be seen as blanket extensions of the right of

4

non-signatories to enforce arbitration clauses against signatories. Rather, *Sunkist* and *McBro* carved out special niches where it would be unfair to refuse enforcement of an arbitration agreement by a non-signatory.

In *McBro Planning and Development Co. v. Triangle Elec. Construction Co., Inc.*, 741 F.2d 342 (11th Cir. 1984), a construction manager ("McBro") had a written contract with St. Margaret's Hospital to manage a construction project on the hospital's site. The contract contained an arbitration clause. Triangle was a contractor on the same job and had a written contract with St. Margaret's which also contained an arbitration clause. There was no contract between McBro and Triangle. Nevertheless, the Eleventh Circuit affirmed the district court's decision compelling Triangle to arbitrate its disputes with McBro. In doing so, the court held that Triangle was "equitably estopped" from asserting the lack of a written agreement between itself and McBro as a reason for avoiding arbitration. *Id.* at 344. Instead, the court found that "the very basis of [Triangle's] claim against [McBro] was that [McBro] breached the duties and responsibilities assigned to it by" St. Margaret's. *Ibid.* As such, Triangle's claims were "'intimately founded in and intertwined with the underlying contract obligations.'" *Id.* at 344 (quoting *Hughes Masonry Co. v. Greater Clark County Sch. Bldg. Corp.*, 659 F.2d 836, 841 n. 9 (7th Cir. 1981).

This analysis is inapplicable to the case at bar. In the state court action, Bishop has sued General Motors, the dealer, and the salesman. However, the claims which Bishop

asserts against General Motors are not "founded in," "intertwined with," or based upon the contract between Bishop and the dealer. *McBro* at 344. Thus, the *McBro* analysis will not provide General Motors a mechanism by which to compel Bishop to arbitrate.

The other case upon which General Motors relies is *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753 (11th Cir. 1993). Sunkist Growers is the exclusive owner and licensor of the "Sunkist" name. Sunkist Growers licensed the name to an entity known as Sunkist Soft Drinks, Inc. ("SSD"), a wholly owned subsidiary of General Cinema Corporation ("GCC"). *Id.* at 755. The licensing agreement contained an arbitration clause. GCC then sold SSD to Del Monte Corporation. "Del Monte absorbed SSD into its own beverage products division .... effectively stripp[ing] SSD of its employees and management and any other separate operating status." *Id.* at 755. A licensing dispute arose, lawsuits were filed, and SSD was sold to a third party. During the lawsuit, Del Monte, a non-signatory, sought to enforce the arbitration clause of the licensing agreement against a signatory, Sunkist Growers. The district court compelled the arbitration, and the Eleventh Circuit affirmed the district court's decision. The Eleventh Circuit based its decision upon "[t]he nexus between Sunkist [Growers's] claims and the license agreement, as well as the integral relationship between SSD and Del Monte." *Id.* at 758.

Like the reasoning in *McBro*, the *Sunkist* analysis is clearly inapplicable to the instant case. In *Sunkist*, Del Monte had ceased to operate SSD as an independent entity.

6

Del Monte and SSD were one-in-the-same for business purposes. This clearly is not the case here. General Motors and the dealer are completely separate entities. They do business with one another. However, neither is "absorbed into" the other. *Ibid.* The other rationale by which the *Sunkist* court allowed enforcement by a non-signatory was the nexus between the claims alleged by the signatory and the contract containing the arbitration clause. This differs from the case at bar. As discussed above, the claims which Bishop asserts against General Motors are not "founded in," "intertwined with," or based upon the contract between Bishop and the dealer. *McBro* at 344; *Sunkist* at 758. Thus, the *Sunkist* analysis is also inapplicable in the instant case. Since neither the *McBro* nor the *Sunkist* exceptions apply, the general rule of contract interpretation governs. General Motors cannot enforce a clause of a contract to which it was not a party.[1] Thus, Bishop's motion for partial summary judgment is due to be granted.

### III.  Alternative motion for jury trial

This court having concluded that Respondent's dispositive motion is due to be granted, there is no need for a trial in this case. Thus, Plaintiff's alternative motion for a jury trial is deemed moot pursuant to the separate order this day entered.

### IV.  Conclusion

It is therefore **ORDERED** that Respondent's second motion for partial summary

---

[1] At least two other courts have read *Sunkist* and *McBro* as limited holdings. *See Wilson v. Waverlee Homes, Inc.*, 954 F. Supp. 1530 (M.D. Ala. 1997); *Ex parte Isbell*, 708 So. 2d 571 (Ala. 1997).

judgment (doc. 19) be and hereby is **GRANTED** in accordance with the separate memorandum opinion this day entered. No genuine issue of material fact remains in this case.

It is further **ORDERED** that Respondent's second alternative motion for a jury trial (doc. 19) be and hereby is **MOOT**.

**DONE and ORDERED** this the 22 day of February, 1999.

Inge P. Johnson
United States District Judge